UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| RICHMOND AUTO AUCTION OF VIRGINIA, INC., a Virginia corporation, | ) ) ) ) | |
| *Claimant*, | ) ) | |
| v. | ) ) | |
| HOPSON ACRES FAMILY MANAGEMENT, LLC, a New Jersey limited liability company, | ) ) ) ) ) | Civil Action No. 3:23-cv-176 |
| and | ) ) | |
| GUNNAR HOPSON, | ) ) | |
| *Respondents.* | ) | |

## COMPLAINT

The Plaintiff, Richmond Auto Auction to Virginia, Inc., a Virginia corporation, by counsel, for its Complaint against the Defendants, Hopson Acres Family Management, LLC, a New Jersey limited liability company, and Gunnar Hopson, states as follows:

### NATURE OF CLAIMS

1.      The Plaintiff, Richmond Auto Auction of Virginia, Inc., a Virginia corporation ("RAA"), sells motor vehicles at auction, both in person and online. In addition to auction services, RAA also provides services related to the wholesale purchase and sale of new and used motor vehicles by motor vehicle dealers, the sale of repossessed and off-lease motor vehicles held by financial institutions, and the like. RAA entered into a contract with Hopson Acres

1

Family Management, LLC ("HAFM"), a limited liability company organized under the laws of New Jersey, to be RAA's representative for such sale transactions. Gunnar Hopson ("Hopson") is the sole member and employee of HAFM and was, like HAFM, RAA's agent and sales representative.

2.      As is more fully detailed below, HAFM breached and continues to breach its contract with RAA, which contains restrictive covenants of confidentiality, and against solicitation and competition, and which required HAFM to participate in arbitration to resolve claims arising out of the contract. Both HAFM and Hopson breached their fiduciary duties to RAA, their principal, by engaging in self-dealing without RAA's consent, by acting for others with interests that conflict with RAA's interests without RAA's consent, and by using RAA's confidential business and trade secret information acquired by HAFM and Hopson as a result of the agency, in competition with and to the injury of RAA.

JURISDICTION AND VENUE

3.      RAA is a corporation duly formed under the laws of the Commonwealth of Virginia. HAFM is duly organized under New Jersey law and Hopson, its sole member, is a citizen of the State of New Jersey.

4.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332, in that the parties are diverse and the amount in controversy exceeds $75,000.

5.      Venue is proper in this District and Division under 28 U.S.C. § 1391(b) because the Defendants are subject to personal jurisdiction in this

2

District and Division and are deemed to reside here, because HAFM has agreed

to this venue, and because a substantial part of the events or omissions giving

rise to RAA's claim occurred in this District and Division.

FACTS

6.      With respect to online motor vehicle sales, RAA acts as a

"facilitator" on internet-based platforms that provide wholesale motor vehicle

sales among new and used motor vehicle dealers, financial institutions, and

the like. In trade parlance, a "facilitator" lists vehicles for sale and, if the

vehicle is sold, provides services related to the transaction, such as receiving

and disbursing payments, verifying odometer readings, transferring

documents of title, and resolving disputes between sellers and purchasers. In

that marketplace, RAA trades under the name "CAR-RAC," which has been

registered in the Commonwealth of Virginia as a fictitious name for RAA.

7.      In the North American online wholesale car auction industry,

virtually every motor vehicle offered for sale is tracked by a Texas corporation

named Liquid Motors, Inc. ("Liquid Motors"). Liquid Motors provides

dealership inventory management and marketing tools that standardize

digital vehicle listings. Liquid Motors is to the online wholesale car auction

industry what the Multiple Listing Service is to the real estate sales industry.

8.      In late 2019, RAA began exploring the idea of placing

representatives in places other than central Virginia to expand its services as

a facilitator and to get the business of dealer/sellers that were previously

unserved or underserved.

3

9.    By late 2021, RAA had increased its CAR-RAC sales force to 17 persons, servicing motor vehicle sellers in approximately 26 states.

10.    As a part of this expansion, RAA engaged HAFM and Hopson as sales representatives. On or about May 14, 2021, RAA and Defendant HAFM entered into an agreement memorializing the terms of the relationship (the "Agreement"). A true copy of the Agreement is attached hereto as Exhibit 1.

11.    While under contract with RAA and acting as CAR-RAC sales representatives, HAFM and Hopson were assigned and set up several accounts with Liquid Motors and on online platforms showing RAA/CAR-RAC as the facilitator. Those accounts included: 1330 East St. George Corp.; A-KAR Auto Sales, Inc.; Auto Max Preowned Vehicles; Auto Solutions, Inc.; B and B Auto and Parts, LLC; Eastern Auto Exchange, LLC; Elmora Auto Sales, Inc.; Elmora Auto Sales II, Inc.; High Quality Imports, Inc.; J&S Auto Sales, LLC; J&S AutoHaus Group; Motor World Imports, Inc.; Motor World, Inc.; Motor World USA NJ, LLC; Northeast Kia, LLC; Payless Car Sales; Payless Car Rental, Inc.; Saliba Investments; Sea Shore Auto, LLC; Sea Shore Auto Sales Corporation; Sho Case Auto, LLC; All Sales Auto Group, Inc.; All State Motor, Inc.; Bergenfield Auto Mall, Inc.; Defelice of Point Pleasant, Inc.; Jersey Shore Automotive, LLC; Manahawkin Auto Sales, Inc.; and Pinnacle Automotive Group, LLC (collectively, the "RAA Accounts").

12.    On or about September 20, 2022, at 1:00 p.m., Majd Saboura ("Saboura"), RAA's Director of Digital Sales and Operations, had a telephone

call with Hopson regarding the RAA Accounts. In that call, Saboura noted that Hopson's performance was not up to par and asked Hopson to improve. Hopson later described the meeting as follows: "In that phone meeting Majad [*sic*] began asking about my accounts and told me that I didn't know what I was doing and he was very hostile to me. I really did know how to take him [*sic*] and I was stunned that the director of a company would be so hostile. He ended our conversation by telling me that my future with Richmond Auto Auction/Car-Rac wasn't looking good."

13. A few hours after the phone call with Saboura, on September 20, 2022, at 7:30 p.m., without authorization from RAA or any notice to RAA, Hopson used his RAA email account to close the following RAA Accounts with Liquid Motors: Northeast Kia, LLC; Eastern Auto Exchange, LLC; Auto Max Preowned Vehicles; High Quality Imports Inc.; Motor World Imports, Inc.; Motor World, Inc.; Motor World USA NJ, LLC; Auto Solutions Inc.; Sea Shore Auto, LLC; and Sea Shore Auto Sales Corporation.

14. On September 21, 2022, at 2:35 p.m., without any notice or authorization, Hopson again used his RAA email account to close the following RAA accounts with Liquid Motors: 1330 East St. George Corp.; A-KAR Auto Sales, Inc.; B and B Auto and Parts, LLC; Payless Car Sales; Payless Car Rental, Inc.; Elmora Auto Sales, Inc.; Elmora Auto Sales II, Inc.; Sho Case Auto, LLC; J&S Auto Sales, LLC; and J&S AutoHaus Group.

15.    On September 21, 2022, Saboura received a telephone call from an employee of one of the online wholesale car auction platforms advising him that a competing auction company was attempting to register Hopson as one of its sales representatives on the platform. Later that day, Saboura learned from Liquid Motors that HAFM and Hopson had, on or before September 21, 2022, instructed Liquid Motors to close all of the remaining RAA Accounts.

16.    On September 22, 2022, at 7:41 a.m. Hopson sent the following email message to RAA: "Good morning, effective now I resign from representing Car-Rac. … . [Saboura] began reviewing accounts with me and told me that I didn't know what I was doing and he wasn't happy that we still had these accounts. I tried to explain to him the situation but I could tell he wasn't listening. Then he said to me that things weren't looking good for me at Car-Rac. It was then that I knew that he was trying to get me to resign. Well, he's getting what he asked for."

17.    Hopson's September 22, 2022, email, referred to above, was a repudiation and breach of the Agreement.

18.    The Agreement requires thirty (30) days advance notice of termination. (Agreement § 9.A.) Apart from the terms of the Agreement that survived termination, HAFM remained under contract with RAA until October 22, 2022.

19.    On September 22, 2022, RAA filed a demand for arbitration with the American Arbitration Association pursuant to the Agreement.

20.     On October 14, 2022, one of the RAA Accounts, Sho Case Auto, LLC, inadvertently sent an email to Hopson's RAA email address with an attachment from Your Auto Auction of Tampa, Florida, (the "Tampa Auction") and a voided check so that the Tampa Auction could process automated clearinghouse transactions for the Sho Case Auto account.

21.     On or about October 18, 2022, Liquid Motors advised RAA that the following listings had been removed from RAA's account and reassigned by HAFM and Hopson to the Tampa Auction: Pinnacle Auto Group, LLC; A-KAR Auto Sales, Inc.; Defelice of Point Pleasant, Inc.; Saliba Investments; Bergenfield Auto Mall, Inc.; 1330 East St. George Corp.; B and B Auto and Parts, LLC; Sho Case Auto, LLC; Manahawkin Auto Sales, Inc.; J&S AutoHaus Group; and Motor World Imports, Inc.,  Motor World, Inc., and Motor World USA NJ, LLC.

22.     The Tampa Auction is a wholly-owned subsidiary of XLerate Group, a nationwide motor vehicle auction and facilitation company. XLerate Group and the Tampa Auction are competitors of RAA.

23.     On information and belief, Hopson, HAFM, or both of them, will be paid compensation related to sales resulting from the RAA Account listings now registered to the Tampa Auction and other businesses.

24.     As agents and sales representatives of RAA, Hopson and HAFM each had a fiduciary duty of loyalty to RAA with respect to the matters within the scope of their agency. Hopson and HAFM each were bound to the exercise

of the utmost good faith toward RAA, their principal. As agents and sales representatives, Hopson and HAFM were each duty bound not to act adversely to the interests of RAA by serving or acquiring any private interest of their own in antagonism or opposition to RAA's interests.

25.     Following Hopson's email repudiating and breaching the Agreement, HAFM and Hopson have failed and refused to return to RAA all of RAA's records provided in connection with the engagement and have failed and refused to return all of RAA's equipment.

26.     HAFM agreed, in Section 22 of the Agreement, to resolve disputes arising under or in connection with HAFM's engagement or the Agreement by arbitration conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

27.     After it filed a demand for arbitration, RAA sought to arbitrate this dispute. At the request of the American Arbitration Association, RAA has paid more than $20,000 toward administrative costs and fees for the arbitrator. HAFM and Hopson, however, have failed to file any response other than an email generally denying RAA's claims, have failed to answer discovery requests, and have failed and refused to pay their share of the fees, costs, and expenses of the arbitration.

28.     By email dated February 28, 2023, Hopson advised the American Arbitration Association that he was "not responsible for any of the fees for this arbitration."

29.    Because HAFM and Hopson failed and refused to pay their share of the fees, costs, and expenses of the arbitration, the arbitrator has suspended all proceedings. As a result of their failure to participate meaningfully in the arbitration and their failure to pay their share of fees, costs, and expenses, HAFM and Hopson are in default in proceeding with the arbitration within the meaning of 9 U.S.C. § 3.

## COUNT I: Breach of Contract

30.    The foregoing allegations are repleaded herein as if set forth in full.

31.    The Agreement is a valid and enforceable agreement between RAA and HAFM.

32.    The Agreement obligates HAFM not to be employed by or serve as an independent contractor to any other person or entity during the term of the Agreement. (Agreement § 7).

33.    The Agreement obligates HAFM to give RAA thirty days' notice of termination. (Agreement § 9.A.).

34.    The Agreement obligates HAFM to return all information and related equipment belonging to RAA upon termination of the Agreement. (Agreement § 10).

35.    The Agreement prohibits HAFM from soliciting, requesting, advising, or encouraging any current or prospective client of RAA from withdrawing, curtailing, or cancelling its business with RAA or doing any act

which may result in the impairment of the relationship between RAA and any client. (Agreement § 11).

36.    The Agreement obligates HAFM to resolve disputes by arbitration conducted in Virginia pursuant to the Commercial Rules of the American Arbitration Association. (Agreement § 22).

37.    By its actions described above, HAFM has breached and continues to breach the Agreement, in particular Agreement Sections 7, 9, 10, 11, and 22.

38.    As a direct and proximate result of HAFM's breaches, RAA has been damaged in an amount not less than $250,000.

### COUNT II: Breach of fiduciary duty (HAFM)

39.    The foregoing allegations are repleaded herein as if set forth in full.

40.    As an agent and sales representative of RAA, HAFM owed to RAA a fiduciary duty of loyalty and fair dealing. This fiduciary duty of loyalty included the duty to not compete with RAA during HAFM's engagement. HAFM breached this duty of loyalty by actively soliciting and diverting RAA's clients to a competitor of RAA prior to Hopson's repudiation of the Agreement and during the 30-day notice period.

41.    HAFM also owed a duty to prevent the disclosure and misuse of confidential business information belonging to RAA. HAFM misused and misappropriated confidential business information belonging to RAA, which HAFM had a duty to maintain confidentially, to improperly solicit RAA clients.

10

42.     HAFM breached its fiduciary duty of loyalty by intentionally converting RAA's property and proprietary information for its own benefit, and for the benefit of the Tampa Auction, prior to ending HAFM's engagement with RAA.

43.     HAFM misused and misappropriated confidential business information belonging to RAA, which HAFM had a duty to maintain confidentially, and provided RAA's information to the Tampa Auction, a competitor of RAA.

44.     As a direct and proximate result of these breaches of fiduciary duty, RAA has suffered substantial damages, including lost clients and profits.

### COUNT III: Breach of fiduciary duty (Hopson)

45.     The foregoing allegations are repleaded herein as if set forth in full.

46.     HAFM acted by and through Hopson, its sole agent. Hopson's relationship to RAA was that of a sub-agent or subcontractor.

47.     As a sub-agent or sub-contractor and sales representative of RAA, Hopson owed to RAA a fiduciary duty of loyalty and fair dealing. This fiduciary duty of loyalty included the duty to not compete with RAA during Hopson's engagement. Hopson breached this duty of loyalty by actively soliciting and diverting RAA's clients to a competitor of RAA prior to Hopson's repudiation of the Agreement and during the Agreement's 30-day notice period.

48.     Hopson also owed a duty to prevent the disclosure and misuse of confidential business information belonging to RAA. Hopson misused and

11

misappropriated confidential business information belonging to RAA, which Hopson had a duty to maintain confidentially, to improperly solicit RAA clients.

49.     Hopson breached his fiduciary duty of loyalty by intentionally converting RAA's property and proprietary information for his own benefit, and for the benefit of the Tampa Auction, prior to ending Hopson's engagement with RAA.

50.     Hopson misused and misappropriated confidential business information belonging to RAA, which Hopson had a duty to maintain confidentially, and provided that information to the Tampa Auction, a competitor of RAA.

51.     As a direct and proximate result of these breaches of fiduciary duty, RAA has suffered substantial damages, including lost clients and profits.

REQUEST FOR RELIEF

WHEREFORE, the Plaintiff, Richmond Auto Auction of Virginia, Inc., by counsel, requests the following relief:

A.  Compensatory economic damages for breach of contract in an amount not less than $250,000.00 against the Defendants, jointly and severally;

B.  Compensatory economic damages for breach of fiduciary duty in an amount not less than $250,000 against the Defendants, jointly and severally;

C.  An award of attorney's fees and costs against HAFM pursuant to the Agreement;

D.  An Order requiring Defendants to return immediately any confidential or proprietary information taken from RAA, including RAA's client listings, and enjoining Defendants from further use of any such information;

E.  The imposition of a constructive trust over funds received by the Defendants from all wrongfully taken RAA Accounts;

F.  Pre-judgment interest; and,

G.  Any other relief the Court deems appropriate.

RICHMOND AUTO AUCTION OF
VIRGINIA, INC.
By Counsel:

/s/ Blackwell N. Shelley, Jr.
Blackwell N. Shelley, Jr.
(VSB No. 28142)
Shelley Cupp Schulte, P.C.
3 W. Cary Street
Richmond, Virginia 23220
Tel: (804) 644-9700
Fax: (804) 278-9634
shelley@scs.law
*Attorney for Plaintiff*
